IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROGER B. PARKER and
SALLY S. PARKER,
      Plaintiffs                          : CIVIL ACTION NO.

v.

LONG BEACH MORTGAGE COMPANY, et al.,
      Defendants                        :     06-CV-2002

## PLAINTIFFS' PRETRIAL MEMORANDUM

### A. NATURE OF THE ACTION AND JURISDICTION

      This is an action seeking damages, a declaration of rescission, and remedies for rescission under the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. ("the TILA") and applicable state law against the original lenders and the current mortgage holders arising out of two separate loan transactions; under the federal Real Estate Settlement practices Act, 12 U.S.C. section 2610, et seq. ("RESPA") against the servicers of the loans relating to those transactions; and state law claims against the broker in the transactions. Federal jurisdiction of this court to hear this action is conferred by 15 U.S.C. § 1640(e) of the TILA and 12 U.S.C. section 2614 of RESPA. Pendent jurisdiction of this court is conferred to hear the related claims against the broker.

### B. BRIEF STATEMENT OF THE FACTS OF THE CASE.

      The Plaintiffs are individuals who at the outset of the transactions at issue had strong credit ratings who purchased a property at 10 Nathan's Place, West Conshohocken, PA.

1

19438 ("the Nathan Property"), which is smaller than their home at 706 Willowbend Drive, Unit #819, Blue Bell, PA. 19422 ("the Home"), and which they planned to rent for a time and ultimately into which they intended to move. The realtor selling the Nathan Property introduced them to her friend, Jack Weinstein, a loan broker who operates under the name of Lancealott Financial Group, Inc. ("Weinstein"), to arrange the financing for the transaction. Weinstein arranged a transaction to finance purchase the Nathan Property which settled on October 14, 2005 ("the October Settlement"), and which featured two separate loans from a secondary market lender, Long Beach Mortgage Corporation ("LBMC"). The Plaintiffs had received an estimate of the loan terms just very shortly before settlement and they were very dissatisfied with the terms. They so advised Weinstein, but were told that the financing terms could be revised at the settlement. In fact, at the settlement Weinstein contacted a representative of Washington Mutual Bank ("WAMU"), who stated that he indeed could provide much better terms than those proposed. The parties were prepared to leave and return when the new loan terms had been formulated. However, Weinstein stopped them, contending that the WAMU representative had told him that providing the new terms was contingent on the closing of the loan under the original terms that day. In reliance upon these representations, later discovered to be false, the Plaintiffs closed under the terms originally presented. Among other things, the terms included splitting what the Plaintiffs assumed would be one loan into two. The larger and smaller portions of the LBMC loan were ultimately assigned to WAMU and HSBC Bank USA ("HSBC"), respectively.

Prior to the Plaintiffs' discovery that the October 14, 2005, transaction would not be modified to comply with the terms proposed by WAMU, Weinstein convinced them that it would be to their advantage to hire him to arrange a refinancing of their Home's present mortgage

loan to pay off an SBA loan which was also secured by the Home. Weinstein then proceeded to arrange a secondary-market loan transaction from MortgageIT, Inc. ("MII") which settled on November 14, 2005 ("the November Settlement"), and which again, unknown to the Plaintiffs prior to settlement, featured a splitting of the transaction into two separate loans from MII secured by the Home. In the course of this transaction, the Plaintiffs did not receive a TILA Disclosure Statement pertaining to the larger portion of the loan and they only received one copy of a Notice of Right to Cancel. The larger and smaller portions of the MII were initially assigned to GMAC Mortgage Corporation ("GMAC") and Indymac Mortgage Holdings, Inc. ("Indymac"), respectively. At about the time that the Plaintiffs filed this action on May 12, 2006, the GMAC "portion" of the loan was reassigned to an entity on whose behalf the Plaintiffs received statements designating Countrywide Home Loans, Inc. ("CHL"). The Answer of CHL to the Second Amended Complaint adding it as a party and their failure to disclose that they were not the "actual" servicer or owner of the loan caused the Plaintiffs to reasonably assume that then correct partyt was named and any contention that it was not the correct party was not divulged to the Plaintiffs until CHL filed a motion for summary judgment on November 2, 2007. At that time the "actual" servicer of the loan was identified as Countrywide Financial Corporation ("CFC") and, on December 3, 2007, the owner of the loan was identified as Countrywide Bank, FSB ("CBank").

      The Plaintiffs did not appreciate the disadvantageous nature of these loans and the predicament into which it placed them until January, 2006, when they consulted counsel, who, after unsuccessfully requesting the broker to attempt to remedy their circumstances, made the parties who made the loans and who were believed to be then holding their various loans aware of

their predicament in letters of February 27, 2006, in which they sought to rescind the loans. When there were no affirmative responses to this letter, the Plaintiffs filed this action on May 12, 2006.

### C. DAMAGES AND OTHER RELIEF SOUGHT

The Complaint contains four counts. The first asserts claims for statutory damages for TILA disclosure violations against the original lenders, LBMC and MII, and against the ultimate holders of the loans, WAMU, HSBC, CHL, and Indymac, in both transactions. These claims amount to statutory damages of $2000 from each portion of both transactions plus reasonable costs and attorneys' fees. Count Two attempts to enforce the Plaintiffs' ignored rescission demands. The rescission claims arising from the Nathan Property transaction are made under applicable Pennsylvania common law, based on a mutual mistake on the part of them and the lenders with which they were involved, LBMC, which was an affiliate of WAMU, and WAMU, whose representative was involved in attempting to make the revised loan and who coincidentally became the servicer and owner of the largewr portion of the loan. The relief sought is essentially a modification of the loan to reflect the terms that under which the Plaintiffs and WAMU representative believed that the loan would be made. The rescission claims arising from the Home refinancing transaction arise under 15 U.S.C. section 1635(b) of the TILA. The refusal of the parties involved in that transaction to honor the Plaintiffs' valid rescission gives rise to additional statutory damages of $2000 for portion of this transaction, satisfaction of the mortgages taken, refunds of all sums paid by the Plaintiffs on account of this transaction to all interested parties, elimination of the Plaintiffs' obligation to repay these loans, and costs and reasonable attorneys' fees. Count Three seeks $1000 in RESPA damages from WAMU, CHL, and Indymac,

as servicers of these loans. Count Four seeks damages under the Pennsylvania Credit Services Act, 73 Pa.C.S. 2181, et seq. ("the CSA"); the Pennsylvania Loan Brokers Trade Practice Regulations, 47 PA. CODE 305.3 ("the LBTP"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. section 201-1, et seq. ("UTPCPL"), against the broker. The minimum, statutory damages due for the CSA violations are measured by the amount of compensation received in all of the transactions by the broker, which is believed to be a total of $36,830.93. Any violation of the CSA is a per se violation of the UTPCPL, which authorizes treble damages, which here would amount to an additional $114,492.79. Additional damages can be measured only when it is determined what loan obligations the Plaintiffs are left with at the end of the day, as compared to what they were promised by the broker prior to the transactions at issue.

### D. **POTENTIAL WITNESSES**

All of the witnesses are liability witnesses.
1. Roger B. and Sally S. Parker, 706 Willowbend Drive, Blue Bell, PA. 19422
2. Jennifer Stagliano, Security Abstract, 1741 Valley Forge Rd., Worcester, PA. 19490
3. Jeffrey Semons, Sturbridge Associates, LLC, P.O. Box 880, Skippack, PA. 19474
4. Lee Dinenburg, spelling uncertain & address unknown, representative of WAMU
5. Jack Weinstein, 9 Cynwyd Rd., Bala-Cynwyd, PA. 19004

   6. Marie Therese McDonnell, 30 Main St., Rear, P.O. Box 2760, Orleans, MA. 02653 (potential expert witness)

   7. Any parties named by any party defendants (Plaintiffs have not at this time received any notices of any parties' potential witnesses, and may have to supplement their witness list upon receipt of same).

# E. LIST OF EXHIBITS

   1. All documents received by the Plaintiffs at settlement in connection with the loan of October 14, 2005.

   2. All documents received by the Plaintiffs at settlement in connection with the loan of November 14, 2005.

   3. The Truth-in-Lending Disclosure Statement reflecting the larger portion of the Loan of November 14, 2005 (not received by the Plaintiffs but produced in discovery).

   4. Letter of January 20, 2006, to Jack Weinstein

   5. Two Letters of February 27, 2006 (attached to Complaint)

   6. Responses to Letters of February 27, 2006 (attached to Complaint)

   7. Expert Report of Marie Therese McDonnell

   8. Responses to Discovery propounded by the Plaintiffs to the Defendants

   9. The Plaintiffs reserve the right to include any Exhibits designated by any of the Defendants (Plaintiffs have not at this time received any lists or

copies of Exhibits from any parties Defendant, and may have to supplement their witness list upon receipt of same).

## F. ESTIMATE OF DAYS REQUIRED FOR TRIAL

The Plaintiffs estimate that their case can be presented in one-half day. They estimate two days will be required for the entire trial.

## G. SPECIAL COMMENTS

The parties who are actually servicing and who own or hold all of the loans should be verified prior to trial and all such parties joined as parties to this action to the extent practicable at this time. In light of the belated advice that the larger portion of the Home loan is serviced and owned by CFC and CBank, respectively, rather than by CHL, as was reasonably assumed until November 2, 2007, CFC and CBank should added to the action in order to avoid the prospect of further duplicative litigation against those parties.

```
_____
DAVID A. SCHOLL
6 St. Albans Avenue
Newtown Square, PA. 19073
610-353-7543
Attorney for Plaintiffs
```