**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROGER B. PARKER and** | :     CIVIL ACTION |
| **SALLY S. PARKER,** | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : |
| | :     NO. 06-CV-2002 |
| **LONG BEACH MUTUAL COMPANY,** | : |
| **WASHINGTON MUTUAL HOME** | : |
| **LOANS, OCWEN MORTGAGE** | : |
| **COMPANY, LLC, MORTGAGEIT, INC.,** | : |
| **GMAC MORTGAGE CORPORATION,** | : |
| **INDYMAC MORTGAGE HOLDINGS,** | : |
| **INC., and LANCEALOTT FINANCIAL** | : |
| **GROUP, INC.,** | : |
| **Defendants**. | : |

**DEFENDANT INDYMAC MORTGAGE HOLDINGS**
**INC.'s PRETRIAL MEMORANDUM**

**1.      NATURE OF ACTION AND JURISDICTION**

Plaintiffs Roger and Sally Parker assert claims against Indymac for violations of the

Truth In Lending Act, 15 U.S.C. § 1635 *et seq.* ("TILA") and the Real Estate Settlement

Practices Act, 12 U.S.C. §§ 2605(e) and (f) ("RESPA").  This Court has subject matter

jurisdiction over both claims against Indymac pursuant to 28 U.S.C. § 1331.

**II.      BRIEF STATEMENT OF FACTS**

Indymac services a second mortgage (hereinafter the "Blue Bell Second Mortgage") on

real estate owned by Plaintiffs and located at 706 Willowbend Drive, Blue Bell, Pennsylvania.

The loan was entered into by Plaintiff Roger Parker and Mortgage IT on November 14, 2005,

and subsequently assigned by MortgageIT on April 29, 2006.  The loan is serviced by Indymac.

On November 14, 2005, Plaintiff Roger Parker and Mortgage IT also entered into a larger loan

agreement secured by a first mortgage.  The first mortgage loan was subsequently assigned and

is currently serviced by Countrywide.

Plaintiffs claim that they are entitled to rescind the Blue Bell Second Mortgage pursuant to TILA because the defendants engaged in improper "loan splitting," *i.e.*, Plaintiffs allegedly were misled by their broker into agreeing to two loans with MortgageIT instead of one. Plaintiffs also allege that they did not receive accurate TILA disclosures at the closing and/or that they did not receive two copies of a true TILA-mandated Notice of Right to Cancel.

Plaintiffs also assert a claim under RESPA for failure to respond to a qualified written request ("QWR").   Plaintiffs' alleged QWR was sent to Indymac at P.O. Box 78826, Phoenix, AZ 85062-8826.

## III.   DEFENDANT'S POSITION AS TO THE PLAINTIFFS' CLAIMS

### A.   Plaintiffs' TILA Claim Fails Because the Allegedly Improper Loan Splitting Is Not Apparent on the Face of the Assigned Documents

Plaintiffs' TILA claim is that the defendants allegedly engaged in improper "loan splitting."  Loan splitting potentially violates TILA if a borrower expected to receive a single loan but instead received two separate loans in one transaction.  See Kane v. Equity One, 2003 WL 22939377, at *2 (E.D. Pa. Nov. 21, 2003).  That practice violates TILA because the lender does not provide a single comprehensible disclosure of the cost of credit.  12 C.F.R. § 226.17(a) (2003); see also Kane, 2003 WL 22939377, at *2.

As Plaintiff Sally Parker testified at her deposition, Indymac was not involved in the origination of any of the loans at issue in this case.  Indymac did not have any contact with the Plaintiffs before they signed the mortgage loans, did not make any representation to the Plaintiffs before they signed their loans, and did not attend the mortgage closing.  Indymac only became involved when it was given servicing rights for the second mortgage.  Because Indymac was not

involved in the loan origination, it could only be subject to liability as an assignee under the

TILA.1

Assignees are subject to TILA liability only if the TILA violation is apparent "on the face

of the disclosure statement."  15 U.S.C. § 1641(e)(1)(a).  Section 1641(e)(2) explains that a

TILA violation is apparent on the face of the disclosure statement if:

> (A) the disclosure can be determined to be incomplete or inaccurate by a
> comparison among the disclosure statement, any itemization of the amount
> financed, the note, or any other disclosure or disbursement; or
> (B) the disclosure statement does not use the terms or format required to be used
> by this subchapter.

15 U.S.C. § 1641(e)(2).  The plain language of the statute provisions must be strictly construed.

Assignees cannot be held liable for improper "loan splitting" because improper "loan

splitting" is not evident on the face of the disclosure documents.  See Kane, 2003 WL 22939377,

at *4.  The existence of two separate loans is not a per se violation of TILA.  Id. at *4 ("[C]ase

law suggests that is permissible to structure transactions as separate loans if the borrower

assents.") (citing Rendler v. Corus Bank, 272 F.3d 992, 997-98 (7th Cir. 2001) ("The [TILA]

commentary makes it clear that lenders have some flexibility in structuring loan transactions

with each consumer, even multiple loan transactions financing a single piece of property.")).

Because issuing two loans, as MortgageIT did here, is not an inherent violation of TILA, there

can be no TILA violation on the face of the assigned documents that could have been apparent to

an assignee.

Assignees also do not have any additional duty of inquiry to investigate possible TILA

violations.  Ramadan v. Chase Manhattan Corp., 229 F.3d 194, 198 (3d Cir. 2000).  Violations

must be apparent on the face of the assigned disclosure documents.  Id.  In this case, MortgageIT

---

1        As noted above, Indymac is not the assignee of the Blue Bell Second Mortgage.

assigned a second mortgage on the Parker's primary residence.  Although the assignee was arguably aware that there were two loans on the property, the existence of two loans is permissible in many circumstances, and as such, can not be a violation of TILA on the face of the loan documents.

Plaintiffs also cannot prove any of their other TILA violations against Indymac.  The main basis for these additional alleged TILA violations is that the lenders failed to properly disclose the finance charges and the annual percentage rate.  To support these claims against an assignee, as discussed above, plaintiffs must show that these alleged disclosure issues were evident on the face of the assigned documents.  Plaintiffs have offered no evidence to support this claim beyond the bald assertions in their Complaint.  Therefore, they cannot prove a TILA violations by Indymac (or Mortgage IT) based on inaccurate disclosures.

Furthermore, Plaintiffs received copies of each TILA mandated document, including two copies of the Notice of Right to Cancel regarding the second loan on their primary residence, the only loan serviced by Indymac.  The applicable Notices of Right to Cancel, which will be offered by Indymac at trial, include the signatures of Sally and Roger Parker.  Both Sally and Roger Parker testified at their depositions that the signatures were valid.  The closing agent will also testify at trial that the Parkers received complete copies of all loan documents and that each loan document was explained by him.  Therefore, Plaintiffs clearly received all the necessary documents for the loan and will not be able to prove this claim at trial.

**B.      Plaintiffs' Cannot Recover Damages on Their RESPA Claim**

Upon receipt of a Qualified Written Request ("QWR") from a borrower, a loan servicer must acknowledge receipt of the QWR and provide the borrower with the information requested or an explanation for the servicer's conclusion that the account is correct.  24 C.F.R. §

3500.21(e).

Even if Plaintiffs were able to prove that Indymac did not respond appropriately to their alleged QWR, Plaintiffs will not be able to recover any damages.  Damages are available for individuals for RESPA/QWR violations for the amount "of any actual damages suffered by the individual as a result of the failure."  24 C.F.R. § 3500.21(f)(1)(i).  Plaintiffs have not offered any evidence of actual damages suffered by them as a result of Indymac's alleged failure to respond to their alleged QWR.

Additional damages of up to $1,000 are available "when there is a pattern or practice of noncompliance with the [RESPA/QWR] requirements."  Id.  In this case, Plaintiffs allege that Indymac's one-time failure to respond to Plaintiffs' QWR was a pattern of noncompliance.  It is well-established that a  pattern or practice of noncompliance is not established by failure to respond to one QWR.  See McCutcheon v. America's Servicing Co., 2007 WL 2287675, at *2 (E.D. Pa. July 31, 2007) (Fullam, J.) ("failure to respond to a single letter does not establish a pattern or practice of noncompliance"); see also In re Maxwell, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (two instances not pattern or practice); In re Tomasevic, 273 B.R. 682, 687 (Bankr. M.D. Fla. 2002) (failure to respond to one QWR not pattern or practice).  Thus, Plaintiffs will be unable to recover any damages under their RESPA/QWR claim.

## IV.    LIST OF WITNESSES

Indymac reserves the right to call in its case any witness identified in any party's Pretrial Memorandum or called by any party as a witness in its case in chief.

Indymac will not call an expert witness to testify in this case.

V.     **EXHIBITS**

1.  Truth in Lending Disclosure Statement for the Blue Bell Second Mortgage signed by Roger B. Parker and Sally S. Parker on 11/14/05.

2.  HUD-1 Settlement Statement for the Blue Bell Second Mortgage  signed by Roger B. Parker and Sally S. Parker on 11/14/05.

3.  First Notice of Right to Cancel for the Blue Bell Second Mortgage signed by Roger B. Parker and Sally S. Parker on 11/14/05.

4.  Second Notice of Right to Cancel for the Blue Bell Second Mortgage signed by Roger B. Parker and Sally S. Parker on 11/14/05.

5.  Note for the Blue Bell Second Mortgage signed by Roger B. Parker on 11/14/05.

6.  Mortgage for the Blue Bell Second Mortgage signed by Roger B. Parker and Sally S. Parker on 11/14/05.

7.  Assignment documentation from Mortgage Electronic Registration System ("MERS") for the Blue Bell Second Mortgage.

8.  Current loan history for the Blue Bell Second Mortgage.

Indymac reserves the right to use in its case any document identified in any party's Pretrial Memorandum or called by any party as a witness in its case in chief.

VI.    **ESTIMATED NUMBER OF DAYS REQUIRED FOR TRIAL**

Two-three days.

VII.   **SPECIAL COMMENTS REGARDING LEGAL ISSUES, STIPULATIONS, AMENDMENTS TO PLEADINGS OR OTHER APPROPRIATE MATTERS**

On December 10, 2007, Plaintiffs disclosed for the first time an expert witness, Marie

Therese McDonnell.  Plaintiffs failed to disclose Ms. McDonnell's in accordance with  the

scheduling orders and Plaintiffs have not produced an expert report authored by Ms. McDonnell

or a CV reflecting Ms. McDonnell's qualifications and experience.  Plaintiffs' extremely belated

disclosure of an expert and failure to serve a report and CV clearly violates the letter and spirit of

the Court's scheduling orders and Rule 26.  As a result, Plaintiffs should be precluded from

presenting Ms. McDonnell as a witness at trial, even if a report is served prior to trial.

Respectfully submitted,

/s/Andrew J. Soven
Andrew J. Soven
PA Attorney I.D. No. 76766
REED SMITH, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA
215-851-8100
215-851-1420 (facsimile)

Attorneys for Defendant
Indymac Mortgage Holdings, Inc.

Dated: December 10, 2007

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew J. Soven, Esquire, certify that a true and correct copy of Defendant Indymac's Pre-Trial Memorandum was served on this 10th day of December, 2007, via ECF upon counsel of record.

/s/Andrew J. Soven_____

Andrew J. Soven
