IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROGER B. PARKER and SALLY S. PARKER,    :   CIVIL ACTION NO. 06-CV-2002-CG
    :
        Plaintiffs    :
    v.    :
    :
LONG BEACH MORTGAGE COMPANY,    :
WASHINGTON MUTUAL HOME LOANS,    :
MORTGAGEIT, INC., INDYMAC MORTGAGE    :
HOLDINGS, INC., HSBC BANK USA,    :
COUNTRYWIDE HOME LOANS, INC. and    :
LANCEALOTT FINANCIAL GROUP, INC.,    :
    :
        Defendants.    :

**AMENDED PRE-TRIAL MEMORANDUM ON BEHALF OF
DEFENDANT MORTGAGEIT, INC.**

**(1)   JURISDICTION AND CLAIMS AS TO DEFENDANT MORTGAGEIT, INC.**

Plaintiffs Roger B. Parker and Sally S. Parker ("Plaintiffs" or the "Parkers") have

filed a Second Amended Complaint (the "Complaint") seeking damages, a declaration of rescission,

and remedies for rescission under the federal Truth-in-Lending Act, 15 U.S.C. §1601, *et seq*.

("TILA").   Plaintiffs also bring related state claims against the defendants.   MortgageIT, Inc.

("MortgageIT") has filed a Counterclaim against Plaintiffs and a Cross-claim against defendant

Lancealott Financial Group, Inc. ("Lancealott").   Jurisdiction is conferred by 15 U.S.C. §1640(e).

**(2)   FACTS**

MORTGAGEIT'S STATEMENT AS TO UNDISPUTED FACTS

The following facts are not in dispute:

a.    Plaintiff Sally Parker is a graduate of American University, where she obtained a

Bachelor of Arts degree with a major in English.

b.     After graduating college, Mrs. Parker worked as a journalist, fashion director and writer.

c.     Plaintiff Roger Parker is a graduate of West Liberty State College in Wheeling, West Virginia, where he obtained a Bachelor of Arts degree with a major in music. Mr. Parker also did post graduate work at Glassboro State College.

d.     After graduating college, Mr. Parker was the head of a music department and high school band director. He then, for the next 20 to 25 years, traveled 10 months a year around the country on cruise ships and to other places performing as an entertainer.

e.     In the 1990s, Plaintiffs began purchasing retail stores. They owned two Mailboxes, Etc. stores and, in 2004, sold those businesses and formed Island Inkjet, which was another business they owned.

f.     The Island Inkjet business was sold by Plaintiffs in October of 2007.

g.     Mrs. Parker is currently a licensed real estate broker with Prudential Fox Roach in Blue Bell, Pennsylvania. She was previously a realtor with Keller Williams in Royersford, Pennsylvania.

h.     Mr. Parker currently owns a concert promotion business by the name of Star Watch, and is a singer and pianist.

i.     On or about October 14, 2005, Plaintiffs obtained two loans (the "Long Beach Loans") from Defendant Long Beach Mortgage Company ("Long Beach") to purchase property located at 10 Nathan's Place, West Conshohocken, Pennsylvania 19438 (the "West Conshohocken Property").

j.     Defendant Washington Mutual Home Loans ("WAMU") and HSBC are the assignees of the Long Beach Loans.

k.      At the time they purchased the West Conshohocken Property, the Parkers intended to move into that property and make it their primary residence.

l.      At or around the same time that Plaintiffs decided to purchase the West Conshohocken Property, which was in August of 2005, they decided to refinance their home, which was located at 706 Willowbend Drive, Unit #819, Blue Bell, PA 19422 (the "Blue Bell Property").

m.      On or about November 14, 2005, Mr. Parker obtained loans from MortgageIT in the amounts of $645,000 (the "Larger Loan") and $129,000 (the "Smaller Loan" and, collectively with the Larger Loan, the "MortgageIT Loans") in order to pay off two prior loans on the Blue Bell Property.

n.      MortgageIT's Loans were secured by mortgages on the Blue Bell Property.

o.      Jack Weinstein, a mortgage broker and the owner of Lancealott, arranged for both the Long Beach Loans and the MortgageIT Loans on Plaintiffs' behalf.

p.      Plaintiffs had no communications with MortgageIT before the MortgageIT Loans closed.

q.      All communications had by the Plaintiffs concerning the MortgageIT Loans, before the closing on those loans, were held with Lancealott.

r.      In connection with the request for a loan from MortgageIT, Mr. Parker provided information for two loan applications provided to MortgageIT in October and November of 2005, in which he represented that his income was $30,000 per month.

s.      Mr. Parker testified, at his deposition on October 29, 2007, that he and his wife's gross income was approximately $30,000 per month when the loan applications were completed.

t.      Prior to the closing on the MortgageIT Loans, Plaintiffs were "worried" about what had occurred with respect to the closing on the West Conshohocken Property and were "hesitant" to go forward with the MortgageIT closing.

u.      Plaintiffs never discussed with MortgageIT or with Lancealott that they wanted one loan, and not two, on the Blue Bell Property.

v.      The MortgageIT Loan closing was conducted by Stephan Axelrod, Esq. of Attorney's Choice Abstract Company.

w.      As the borrower, Mr. Parker signed loan documents at the November 14, 2005 closing including Notes to evidence his obligation to repay the monies advanced in connection with the MortgageIT Loans.

x.      Mr. Parker reviewed the "top line" of the documents he signed and may have also reviewed the figures on the documents.

y.      Mr. Parker signed two loan applications at the closing, one for the Larger Loan and one for the Smaller Loan, in which he affirmed that the information contained in the prior loan applications submitted on his behalf was true and correct.

z.      As the wife of Mr. Parker, and the co-owner of the property securing the MortgageIT Loans, Mrs. Parker signed certain of the loan documents submitted to and relied upon by MortgageIT.

aa.     Each and every document containing Plaintiffs' signatures is genuine and was executed by Plaintiffs at the closing on November 14, 2005.

bb.     Plaintiffs had no questions for the closing agent at the time of closing and did not raise any issues with him concerning the terms of the MortgageIT Loans.

cc.     Among the documents executed on November 14, 2005 were notices of the right to cancel the MortgageIT Loans, which provided Plaintiffs with the right to cancel those loans within three (3) business days after the closing.

dd.     Plaintiffs did not cancel the MortgageIT Loans.

ee.     At the time they signed the documents for the MortgageIT Loans, Plaintiffs could afford the mortgage payments and intended to pay them amounts loaned to them.

ff.     At the time they signed the documents for the MortgageIT Loans, Plaintiffs understood, and were fine with, the interest rates for both loans.

gg.     Plaintiffs knew that the funds from the MortgageIT Loans would pay off a Small Business Administration ("SBA") loan for approximately $165,000 and a first lien on the Blue Bell Property in the approximate amount of $540,000.

hh.     The SBA loan had been obtained by the Parkers in 2004 to purchase their Island Inkjet business.

ii.     The initial interest rate on the SBA loan was 8% but was scheduled to increase to 10% at the end of 2005.

jj.     The funds from the MortgageIT Loans were in fact used, among other things, to pay off the SBA loan in the amount of $163,370.51.

kk.     The funds from the MortgageIT Loans were in fact used, among other things, to pay off the first mortgage loan on the Blue Bell Property in the amount of $547,666.00.

ll.     Plaintiffs received at closing on the MortgageIT Loans a check in the amount of $54,118.90.

mm.     As a result of the closing on the MortgageIT Loans, Plaintiffs' payments were reduced from approximately $5,200 per month to $3,000 per month.

nn.     The loan applications signed and initialed by Mr. Parker on November 14, 2005 and submitted to MortgageIT as to the MortgageIT Loans failed to disclose as liabilities that Plaintiffs had the outstanding mortgages with Long Beach regarding the West Conshohocken Property.

oo.     Mr. Parker admitted under oath during his deposition on October 29, 2007 that he failed to identify the Long Beach Loans and the outstanding mortgages on the West Conshohocken Property on both loan applications.

pp.     The Owner Occupancy Agreements signed on November 14, 2005 by Mr. Parker represented that the Blue Bell Property would be owner occupied for a minimum of one year following MortgageIT's recording of the security instruments evidencing the loans.

qq.     Mr. Parker admitted under oath during his deposition on October 29, 2007 that it was not his intention to remain at the Blue Bell Property for a minimum of one year following the recording of MortgageIT's mortgages.

rr.     Mrs. Parker's deposition testimony, taken on October 16, 2007, also included statements by her that Plaintiffs did not intend to reside at the Blue Bell Property for a minimum of one year following the recording of MortgageIT's mortgages.

ss.     Mrs. Parker testified that, at the time she entered into the refinancing documents with MortgageIT, she intended to reside at the West Conshohocken Property.

tt.     MortgageIT would not have made the MortgageIT Loans had it known of Plaintiffs' liabilities on the West Conshohocken Property and/or Plaintiffs' intent to sell the Blue Bell Property and not reside in same for a minimum of one year.

uu.     GMAC Mortgage Corporation ("GMAC") was the servicer for the MortgageIT Loans.

vv.     The Larger Loan was assigned to Greenwich Capital Financial Products, Inc. ("Greenwich") and then assigned by Greenwich to Countrywide Bank, N.A. ("Countrywide")

- 6 -

ww.     IndyMac Bank Home Loan Servicing, Inc. ("IndyMac") was the servicer for the

Smaller Loan after GMAC.

xx.     Prior to executing the MortgageIT loan documents and the documents for the closing

on the two mortgages on the West Conshohocken Property, Plaintiffs had executed mortgages and

refinancing documents on at least two occasions, for other properties owned by them, in Devon and

in Blue Bell.

yy.     Prior to executing the MortgageIT loan documents and the documents for the closing

on the two mortgages on the West Conshohocken property, Plaintiffs had utilized the services of

another mortgage broker, not Lancealott, to refinance the Blue Bell Property.

zz.     Plaintiffs have taken no actions to sell the Blue Bell Property in order to mitigate their

losses.

aaa.     Plaintiffs never entered into a contract with any real estate agent to list the Blue Bell

Property for sale.

bbb.     On or about August 18, 2005, Lancealott and MortgageIT entered into a Broker

Origination Agreement (the "Broker Agreement"), whereby Lancealott agreed to act as a mortgage

broker with respect to presenting loans to MortgageIT for its consideration.

ccc.     Section 9 of the Broker Agreement states:

(a)     Broker shall indemnify, defend, and hold harmless Lender and its Affiliates,
and directors, officers, agents, and employees, successors, and/or assigns, from and
against any and all damage, loss, liability, cost, actions, causes of action, claims,
demands or expense both direct and indirect (including without limitation reasonable
legal and accounting fees and expenses actually incurred) by whomever asserted,
including but not limited to the claims of: (1) the Borrower arising directly or
indirectly out of the transaction which is the subject matter of this Agreement; and,
(2) any person or persons who prosecute or defend any actions or proceedings as
representatives of or on behalf of any class or interest group, or any governmental
instrumentality, body, agency, department or commission, or any administrative body
or agency having jurisdiction pursuant to any applicable statute, rule, regulation,

order or decree which may arise or be incurred as a result of any action or inaction by broker, including, but not limited to, a breach of any covenant, condition, representation or warranty arising under this Agreement, except as such damage, loss, liability, cost, action, cause of action, claim, demand or expense is caused solely by the negligence or willful misconduct of Lender.

## MORTGAGEIT'S STATEMENT AS TO DISPUTED FACTS

MortgageIT disputes the following facts:

      a.     Plaintiffs received no documents concerning the MortgageIT Loans before the closing on November 14, 2005.

      b.     Plaintiffs were not provided with all required disclosures regarding the Larger Loan.

      c.     Plaintiffs were not provided with all required disclosures regarding the Smaller Loan.

      d.     Plaintiffs did not know the amount of the MortgageIT Loans before the closing.

      e.     Plaintiffs did not know prior to settlement that MortgageIT would be providing two loans.

      f.     Plaintiffs were not provided with information prior to settlement that there would be a prepayment penalty on the Larger Loan.

      g.     Plaintiffs were not provided with information prior to settlement that the Larger Loan was a negative amortization loan.

      h.     Plaintiffs were not provided with information prior to settlement that there was a balloon feature on the Smaller Loan.

      i.     The charges set forth by MortgageIT on the Settlement Statement as to the MortgageIT Loans were not explained or disclosed.

      j.     The charges set forth by MortgageIT on the Settlement Statement as to the MortgageIT Loans were not reasonable or necessary.

      k.     The finance charges for the MortgageIT Loans were not properly calculated.

l.      The closing agent did not explain the right to cancel to Plaintiffs.

m.      Plaintiffs did not receive and sign the requisite number of copies of the notices of right to cancel at the closing.

n.      Plaintiffs did not receive copies of all loan documents that they were required to be given with respect to the MortgageIT Loans.

o.      MortgageIT failed to respond to Plaintiffs' rescission notice before the Complaint was filed.

**(3)      DAMAGES OR OTHER RELIEF**

<u>MORTGAGEIT'S BREACH OF CONTRACT DAMAGES AGAINST LANCEALOTT</u>

Plaintiffs have alleged in the Complaint that they sustained damages resulting from the MortgageIT Loans.  The MortgageIT Loans were brokered by Lancealott.  Pursuant to Section 9 of the Broker Agreement between Lancealott and MortgageIT, MortgageIT is entitled to recover from Lancealott any damages, together with costs, attorneys' fees and interest awarded to Plaintiffs in this action.  Additionally, MortgageIT is entitled to recover its costs and attorneys' fees incurred in connection with this matter.  Further, to the extent that any award is rendered in favor of Plaintiffs and against MortgageIT, the Broker Agreement requires Lancealott to indemnify MortgageIT for same.

<u>MORTGAGEIT'S FRAUDULENT INDUCEMENT AND NEGLIGENT<br>MISREPRESENTATION DAMAGES AGAINST PLAINTIFFS</u>

On or about November 20, 2007, the Court granted MortgageIT's Motion to file a Counterclaim against Plaintiffs for fraudulent inducement and negligent misrepresentation based on Plaintiffs providing certain false information to MortgageIT in connection with the loan process. Specifically, the loan applications as to both the Larger Loan and Smaller Loan failed to disclose as

liabilities that, as of October 14, 2005, Plaintiffs had outstanding mortgages with Long Beach regarding the West Conshohocken Property. Mr. Parker admitted during his deposition that he failed to identify this information on both loan applications. Plaintiffs also falsely represented that the Blue Bell Property would be owner occupied for one year. Both Plaintiffs admitted during their depositions that they did not intend to occupy the Blue Bell Property for one year. As damages, MortgageIT seeks its costs and expenses, including its reasonable attorneys' fees, and any damages incurred as a result of defending the allegations set forth in Plaintiffs' Complaint. The claim for damages is based on the fact that MortgageIT would not have made these loans had it known about the true facts as to Plaintiffs' liabilities and intent.

**(4)    LEGAL ISSUES**

<u>Misrepresentations</u>

Because Plaintiffs have admitted in their Interrogatory Responses that they only had one communication with MortgageIT after the loans were closed, Plaintiffs cannot sustain their claim that MortgageIT made any misrepresentations prior to the loan closing on November 14, 2005 that differed from the actual terms of the MortgageIT Loans. Further, the Complaint does not allege that any of Weinstein's alleged misrepresentations are actually contained in the relevant loan documents. Lastly, Plaintiffs conceded in their opposition to MortgageIT's Motion for Summary Judgment that the claims against MortgageIT for alleged TILA violations are distinct from the fraudulent misrepresentation claims made against Lancealott and Weinstein. Accordingly, Plaintiffs cannot succeed on their claim that MortgageIT violated the TILA by making misrepresentations regarding the terms of the MortgageIT Loans.

<u>Disclosures Regarding the Fees and Terms of the MortgageIT Loans</u>
<u>Were Made and the Fees Were Reasonable</u>

Plaintiffs claim that they are entitled to rescind the MortgageIT Loans because they did not receive accurate disclosures regarding the terms of the MortgageIT Loans, including any finance charges, in violation of 15 U.S.C. §1638(a). Plaintiffs had claimed in the Complaint that they received the requisite disclosures regarding the Smaller Loan, yet later changed their position to assert that they received no documents in advance of the closing.

The TILA requires lenders to make various disclosures, including the "amount financed" and the "finance charge." 15 U.S.C. §§1638(a)(2)-(3). The TILA defines the finance charge as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. §1605(a). Similarly, Regulation Z defines the "finance charge" as "the cost of consumer credit as a dollar amount." 12 C.F.R. §226.4(a).

The finance charge does not need to be itemized. 15 U.S.C. § 1638 (a)(3). Moreover, the finance charge is deemed accurate "if the amount disclosed as the finance charge ... is greater than the amount required to be disclosed...." 15 U.S.C. §1605(f)(1)(B). The pre-paid finance charge which is disclosed on the TILA disclosure statement is calculated as "the principal amount of the loan [], less the amount financed...." *Oscar v. Bank One, N.A.*, 2006 WL 401853, *5 (E.D.Pa. Feb. 17, 2006).

Here, as to the Larger Loan, MortgageIT prepared disclosures on October 11, 2005, the same day it received Plaintiffs' loan application from Lancealott. Also on October 11, 2005, MortgageIT sent these disclosures to Plaintiffs' mortgage broker, Lancealott, to forward to Plaintiffs. The Federal Truth in Lending Statement provided as part of these disclosures clearly indicated that

the amount financed was $673,520.25[1] and that the finance charge was $1,030,463.79. At closing, the Federal Truth in Lending Disclosure indicated that the amount financed was $643,128.58 and that the finance charge was $985,123.22. Because the actual finance charge and amount financed were less than what was initially disclosed in October of 2005, this initial disclosure was accurate under 15 U.S.C. §1605(f)(1)(B).

Plaintiffs testified at their depositions that they received Good Faith Estimates regarding both loans prior to the closing and, more specifically, Mrs. Parker testified to marking up these Good Faith Estimates. The charges on the Good Faith Estimates provided by MortgageIT as to the fees MortgageIT would charge, totaling $603.50, match exactly with the charges Plaintiffs incurred per the final Settlement Statements. The fees MortgageIT charged were reasonable considering the total loan amount.

Because MortgageIT provided Plaintiffs, through their mortgage broker, with Good Faith Estimates that adequately disclosed the loan charges, MortgageIT satisfied its requirements under the TILA. Likewise, as to the fees not charged or determined by MortgageIT, which include fees paid to Lancealott,[2] title insurance fees, recording fees, appraisal fees, notary fees and similar fees, those fees were properly excluded from the finance charge and are deemed reasonable unless the Plaintiffs can show otherwise. 15 U.S.C. §1605(e)(1) and 12 C.F.R. 226.4(c)(7)(i) (title insurance fees excluded); 12 C.F.R. 226.4(a)(1), (c) (fees paid to third parties may be excluded); 15

---

[1] This amount was based on the loan application submitted by Weinstein on the Plaintiffs' behalf to MortgageIT dated October 8, 2005 (but received by MortgageIT on October 11, 2005) which indicated that Mr. Parker was seeking a loan in the amount of $675,000. As noted, the amount loaned to Plaintiffs on the Larger Loan was $645,000. At the closing, the Federal Truth-in-Lending Disclosure Statement as to the Larger Loan indicated the amount financed was $643,128.58.

[2] Plaintiffs also claim they were not advised as to the fees MortgageIT would pay Lancealott at the closing. First, these fees, called "yield spread premiums" were paid by MortgageIT to Lancealott. Second, "yield spread premiums" are excluded from the TILA finance charge because the fee is not paid by the borrower at settlement, but out of interest over the course of the mortgage. *Davis*, 2007 WL 3342398 at *5.

U.S.C. §§1605(d)(1), (3) and 12 C.F.R. 226.4(e)(1), (3) (recording fees and transfer taxes are excluded); 15 U.S. C. §§1605(e)(5) and 12 C.F.R. 225.4(c)(7)(iii) (appraisal fee excluded); *Ricciardi v. Ameriquest Mortg. Co.*, 164 Fed. Appx. 221, 225 (3d Cir. 2006) (finding that a $300 appraisal fee was reasonable); 15 U.S.C. §1605(e)(4) and 12 C.F.R. 226.4(c)(7)(iii) (notary fees are excluded); *Oscar*, 2006 WL 401853 at *5 (stating that if a notary fee is deemed unreasonable, only the excess of the fee over the reasonable amount is then included in the finance charge); 57 Pa. C.S. 167 (as of October 2005, notary fees were fixed at no greater than $5 per notarization); 15 U.S.C. §1605(e)(6) and 12 C.F.R. 226.4(c)(7)(iii) (credit report fees excluded); 15 U.S.C. §1605(e)(5) and 12 C.F.R. 226.4(c)(7)(iv) (flood search fee excluded); *In re Strong*, 356 B.R. 121, 166 (Bankr. E.D.Pa. 2005) (finding that a $15 flood search fee was reasonable); *see Davis*, 2007 WL 3342394 at *3-4 (explaining the concept of the "finance charge" and the exclusions thereto).

Furthermore, the disclosures provided to Plaintiffs before closing also identified the other material terms of the MortgageIT Loans. The disclosures clearly indicated that there would be a prepayment penalty on the Larger Loan.  Likewise, the prepayment penalty was disclosed on the Federal Truth in Lending Disclosure, Note and other documents that Plaintiffs signed at the closing. *Oscar*, 2006 WL 401853 at *3 (signed disclosure statements create a rebuttable presumption that the signer received the disclosures); *Davis v. Deutsche Bank National Trust Co.*, 2007 WL 3342398, *3 (E.D.Pa. Nov. 8, 2007) (granting summary judgment in the lender's favor on this issue because the plaintiffs offered no evidence to rebut this presumption).

The fact that the Larger Loan contained a variable rate of interest and that amounts would be added to the principal of the loan (*i.e.,* negative amortization) was also disclosed prior to the closing in the documents provided to Plaintiffs, including the Adjustable Rate Mortgage Loan

Program Disclosure Monthly Treasury Average Index – Payment Caps, and was again disclosed at closing in several documents signed by Plaintiffs.

As to the Smaller Loan, the disclosures were sent to Lancealott to forward to Plaintiffs on November 3, 2005, one day after receiving their loan application with respect to the Smaller Loan. With the exception of prepaid interest, MortgageIT did not charge any fees on the Smaller Loan. The fact that the Smaller Loan had a balloon feature was clearly evidenced by the Note, an unsigned copy of which was produced by Plaintiffs, which indicated in bold and capital letters that "THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE." Plaintiffs also signed a Balloon Payment Disclosure form at the closing which indicated that the balloon amount would be due on the maturity date. This form advised in capital letters "DO NOT SIGN ANY LOAN DOCUMENTS IF YOU HAVE ANY QUESTIONS ABOUT YOUR LOAN PAYMENTS" and above Plaintiffs' signatures was the statement "I/We hereby acknowledge receipt of the above notice concerning the balloon payment provisions of this loan. I/We further acknowledge that these provisions have also been orally explained to me/us." The Federal Truth in Lending Disclosure Statement attached as Exhibit G to the Complaint clearly indicates that the final payment due on the Smaller Loan would be in the amount of $99,393.49 and would be due on December 1, 2020 - - 15 years after the Smaller Loan was made.

<u>Loan Splitting</u>

In providing two loans, Plaintiffs claim that MortgageIT engaged in impermissible loan-splitting. Loan-splitting occurs when a borrower "requests and expects" to get one loan in one transaction, "'but the lender instead documents and makes disclosures for the loan as if it were two separate transactions.'" *Kane v. Equity One, Inc.*, 2003 WL 22939377, *2 (E.D.Pa. Nov. 21, 2003)

(quoting *Harris v. Ill. Vehicle Premium Fin. Co.*, 2000 WL 1307513, *2 (N.D.Ill. Sept. 12, 2000)).

Because there is nothing improper about a lender offering two separate loans if the borrower

expected that the loan would be so structured, the crucial element to a loan-splitting claim that the

borrowers must satisfy is that they "asked for and expected a single transaction." *Kane*, 2003 WL

22939377 at *2; *Harris*, 2000 WL 1307513 at *2.

Plaintiffs have conceded, in their interrogatories, depositions and joint affidavit

submitted in opposition to MortgageIT's Motion for Summary Judgment, that they had no

communications with MortgageIT until after the loans were closed and, therefore, never advised

MortgageIT that they wanted one loan instead of two. They also testified at depositions that they

never discussed this issue with their broker, Lancealott. Accordingly, they did not ask for or request

one loan and cannot prevail on a loan splitting claim.

Further, the claim that they did not know there were two loans is questionable, at best.

Among the documents produced by Plaintiffs were two Good Faith Estimates, one for each loan as

indicated by the respective loan amounts, which clearly showed that there would be two loans. Also,

during their depositions, Plaintiffs admitted to receiving a "big envelope" of documents before the

closing which would have contained many documents concerning each of their two loans, including

the Good Faith Estimates. Plaintiffs also had two outstanding loans to satisfy with the funds from

MortgageIT, totaling in excess of $710,000. Clearly, neither of the two MortgageIT Loans could,

separately, satisfy the total amounts due and owing on the two loans already made to the Plaintiffs

and secured by mortgages on the Blue Bell Property. Finally, there were numerous documents

signed by the Plaintiffs at closing which clearly alerted them to the fact that there were two loans

(*see, e.g.,* Exhibit H to the Complaint). The closing agent, Mr. Axelrod, will testify that the

Plaintiffs knew that there were two loans that they were obtaining at the closing.

Importantly, Mr. and Mrs. Parker testified that they learned that there were two loans when they "came out of settlement" or "shortly after the settlement date." However, they did not choose to cancel the MortgageIT Loans and cannot now seek recovery for same.

### Notice of Right to Rescind

Pursuant to 12 C.F.R. 226.23(b)(1), each plaintiff is entitled to two copies of the notice of the right of rescission for each loan (*i.e.*, Mr. Parker gets two copies and Mrs. Parker gets two copies). *See* 15 U.S.C. §1635 (entitling obligors to notice of right to rescind). At the closing, both Mr. and Mrs. Parker signed two rescission notices for the Larger Loan. Also at the closing, Mr. and Mrs. Parker signed two rescission notices for the Smaller Loan (they both signed the same copies for this loan). Just above their signatures is the language:

> BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE, I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

In accordance with this language, and the well established legal precedent that the law presumes a party who signs a document has full knowledge of its contents, Plaintiffs' signatures on these rescission notices acknowledge and confirm that they received these notices. *Barnhart v. Barnhart*, 101 A.2d 904, 909 (Pa. 1954) (quoting *In re Birkbeck's Estate*, 64 A. 536, 537 (Pa. 1906)). Further, the closing agent will testify that the requisite number of copies of the notices were provided to the Plaintiffs.

### Rescission

Plaintiffs are only entitled to rescind the MortgageIT Loans if (a) the MortgageIT Loans are ones covered by the TILA and, if so, (b) they can show a material violation of the TILA. Plaintiffs have the burden of showing that a TILA violation has occurred. *In re Ross*, 338 B.R. 266,

271 (Bankr. E.D.Pa. 2006) (quoting *In re Martins*, 1991 WL 126413, *2 (E.D. Pa. July 10, 1991)). If Plaintiffs can demonstrate a TILA violation, the burden shifts to the lender to prove that it has complied with the TILA. *Id.*

As a preliminary matter, a borrower's right to rescind a loan, and a lender's obligations to (a) disclose the right to rescind and (b) recognize a borrower's attempt to rescind, exist only where the borrower and lender are parties to a consumer credit transaction in which the lender acquires a security interest in property that represents the borrower's **principal** dwelling. 15 U.S.C. § 1635(a); *In re Crisomia*, 2002 WL 31202722, *10-11 (Bankr. E.D.Pa. 2002).

It is well settled that a borrower can have only one principal dwelling. *In re Crisomia*, 2002 WL 31202722, *10. In the event that a borrower buys a new dwelling that will become the borrower's principal dwelling within one year, the new dwelling represents the principal dwelling if the new dwelling secures the acquisition or construction loan. *Id.* That is, the property in which the borrower resides at the time of the loan is not necessarily considered the principal dwelling for purposes of the right to rescission.

In this case, Plaintiffs obtained four loans with respect to two properties – the Blue Bell Property and the West Conshohocken Property. MortgageIT was the lender with respect to the refinancing of the Blue Bell Property. Plaintiffs also obtained loans from Long Beach to acquire a new dwelling "into which they planned to move after selling the[ir] Home." Complaint, ¶ 5. The borrowers readily admit that they intended to make the West Conshohocken property – the one in which MortgageIT had no involvement – their principal dwelling. As such, the Blue Bell Property cannot be deemed their principal dwelling and, therefore, Plaintiffs have no right to rescission with respect to the MortgageIT Loans.

Further, even if Plaintiffs can somehow overcome this hurdle, none of the claims advanced by the Plaintiffs in the Complaint, or by way of affidavits and deposition testimony, has any merit. Accordingly, Plaintiffs cannot show a material violation of the TILA and are not entitled to rescind the MortgageIT Loans.

Similarly, Plaintiffs have no common law right to rescind. Under Pennsylvania law, "[i]nadequacy of price, improvidence, surprise, and mere hardship" alone or combined do not "furnish an adequate reason for judicial rescission of a contract. For such action something more is demanded, – such as fraud, mistake or illegality." *Snow v. Corsica Const. Co., Inc.*, 329 A.2d 887, 889 (Pa. 1974) (quoting *Welsh v. Ford*, 127 A. 431, 432 (Pa. 1925)). Plaintiffs have not alleged any fraud, mistake or illegality on the part of MortgageIT. Indeed, in opposing MortgageIT's Motion for Summary Judgment, Plaintiffs conceded that their fraud claims against Lancealott and Weinstein were separate and apart from their claims against MortgageIT. Furthermore, Plaintiffs have not alleged, nor can they, that Lancealott and Weinstein can be considered agents of MortgageIT. The law is clear that a mortgage broker is the agent of the borrower. *In re Barker*, 251 B.R. 250, 259 (Bankr. E.D.Pa. 2000); *McGlawn v. Pa. Human Relations Comm'n*, 891 A.2d 757, 769 (Pa. Commw. Ct. 2006); *see also* Broker Agreement, ¶16. Importantly, Plaintiffs may not even be able to comply with the rescission remedy, if granted, as they have provided no evidence that they can restore the defendants to their pre-contractual positions.

Additionally, with regard to Plaintiffs' claim that MortgageIT failed to respond to their rescission demand, because GMAC was the servicer for the MortgageIT loans when the demand was made, the fact that GMAC responded was sufficient to satisfy MortgageIT's obligation to respond. Notably, Plaintiffs did not include MortgageIT in Count III of the Complaint, which

alleges that WAMU, Countrywide and IndyMac failed to respond to Plaintiffs' qualified written request and therefore are liable for damages under RESPA.

**(5)    WITNESSES**

MORTGAGEIT'S WITNESSES

Liability

<u>Ryan Ashcroft, Branch Manager of MortgageIT</u>: Mr. Ashcroft will testify regarding the terms of the MortgageIT Loans, the disclosures provided to Lancealott to forward to Plaintiffs regarding the loans, MortgageIT's fees as set forth on the Good Faith Estimates and Settlement Statements, and the Agreement between MortgageIT and Lancealott.

<u>Stephan Axelrod, Esq., Attorney's Choice Abstract Co.</u>: Mr. Axelrod was the closing agent for the MortgageIT Loans.  Mr. Axelrod will testify regarding the documents provided to and executed by the Plaintiffs at the closing, as well as the circumstances of the closing, the terms and conditions of the loans, and the explanations provided to the Plaintiffs concerning the documents that they executed.

Damages

As Mr. Ashcroft is familiar with the Agreement entered into between MortgageIT and Lancealott, and the facts relating to MortgageIT's counterclaims against Plaintiffs, he will also testify as to MortgageIT's damages.

## (6)   EXHIBITS[3]

| No. | Description |
|---|---|
| 1 | Loan Application for $675,000 Loan dated 10/8/05 |
| 2 | Loan Application for $129,000 Loan dated 11/1/05 |
| 3 | 10/11/05 Certificate of Mailing w/Attachments (Letter of Explanation; Privacy Statement) for $645,000 Loan |
| 4 | 11/3/05 Certificate of Mailing w/Attachment (Letter of Explanation; Privacy Statement) for $129,000 Loan |
| 5 | Good Faith Estimate as to $645,000 Loan with handwritten notations |
| 6 | Good Faith Estimate as to $129,000 Loan with handwritten notations |
| 7 | Handwritten note dated 10/19/05 from Roger Parker ("Borrower's Letter of Explanation") |
| 8 | 11/14/05 Uniform Residential Loan Application in the amount of $645,000 |
| 9 | 11/14/05 Adjustable Rate Note in the amount of $645,000 and Prepayment Penalty Addendum signed by Roger Parker |
| 10 | 11/14/05 Adjustable Rate Rider signed by Roger and Sally Parker for $645,000 Loan |
| 11 | 11/14/05 Adjustable Rate Mortgage Loan Program Disclosure Monthly Treasury Average Index – Payment Caps signed by Roger Parker for $645,000 Loan |
| 12 | 11/14/05 Mortgage for $645,000 Loan signed by Roger and Sally Parker |
| 13 | 11/14/05 Settlement Statement signed by Roger and Sally Parker for $645,000 Loan |
| 14 | Unsigned Settlement Statement for $645,000 Loan attached as Exhibit H to Complaint |
| 15 | 11/14/05 Federal Truth In Lending Disclosure Statement for $645,000 Loan signed by Roger and Sally Parker |
| 16 | 11/14/05 Federal Truth-In-Lending Disclosure Statement "Itemization of Amount Financed" for $645,000 Loan |
| 17 | 11/14/05 Owner Occupancy Agreement signed by Roger Parker for $645,000 Loan |

---

[3] The Exhibit Numbers will be changed once MortgageIT receives Plaintiffs' list of Exhibits, and those of the other defendants.

| 18 | 11/14/05 Closing Instructions signed by Roger Parker for $645,000 Loan |
|----|---|
| 19 | 11/14/05 Notice of Right to Cancel signed by Sally Parker as to $645,000 Loan |
| 20 | 11/14/05 Notice of Right to Cancel signed by Sally Parker as to $645,000 Loan |
| 21 | 11/14/05 Notice of Right to Cancel signed by Roger Parker as to $645,000 Loan |
| 22 | 11/14/05 Notice of Right to Cancel signed by Roger Parker as to $645,000 Loan |
| 23 | 11/14/05 Uniform Residential Loan Application in the amount of $129,000 |
| 24 | 11/14/05 Note for Loan amount $129,000 signed by Roger Parker |
| 25 | 11/14/05 Balloon Payment Disclosure signed by Roger and Sally Parker for $129,000 Loan |
| 26 | 11/14/05 Mortgage for $129,000 Loan signed by Roger and Sally Parker |
| 27 | 11/14/05 Settlement Statement signed by Roger and Sally Parker for $129,000 Loan |
| 28 | 11/14/05 Federal Truth In Lending Disclosure Statement for $129,000 Loan signed by Roger and Sally Parker |
| 29 | Unsigned Federal Truth In Lending Disclosure Statement for $129,000 Loan attached as Exhibit G to the Complaint |
| 30 | 11/14/05 Federal Truth in Lending Disclosure "Itemization of Amount Financed" for $129,000 Loan signed by Roger and Sally Parker |
| 31 | 11/14/05 Owner Occupancy Agreement signed by Roger Parker for $129,000 Loan |
| 32 | 11/14/05 Closing Instructions signed by Roger Parker for $129,000 Loan |
| 33 | 11/14/05 Notice of Right to Cancel for $129,000 Loan signed by Roger and Sally Parker |
| 34 | 11/14/05 Notice of Right to Cancel for $129,000 Loan signed by Roger and Sally Parker |
| 35 | Attorney's Choice Abstract Co. Check no. 2907 payable to Plaintiffs for $54,118.90 |
| 36 | Attorney's Choice Abstract Co. Check no. 2911 payable to Washington Mutual for $547,666.00 |
| 37 | Documents concerning payment to PNC Bank for the SBA loan in the amount of $163,370.51 |
| 38 | Three pages of notes from Sally Parker produced 10/25/07 |

| 39 | One page of handwritten notes of Asterios produced on 10/25/07 |
| 40 | Second Amended Complaint |
| 41 | Plaintiffs' Responses to MortgageIT's First Request for the Production of Documents |
| 42 | Plaintiffs' Responses to MortgageIT's First Set of Interrogatories |
| 43 | Affidavit of Plaintiffs in Opposition to the Motion of the Defendant MortgageIT For Summary Judgment dated 10/3/07 |
| 44 | Affidavit of Plaintiffs in Opposition to the Motion of the Defendant Countrywide For Summary Judgment dated 11/12/07 |
| 45 | Letter from David Scholl, Esq. to Joy Harmon Sperling, Esq. dated 11/19/07 |
| 46 | MortgageIT's Conditional ARM Approval dated 11/8/05 |
| 47 | MortgageIT Lending Guide PayOption ARM (revised 10/21/05) - **HIGHLY CONFIDENTIAL** |
| 48 | MortgageIT Lending Guide Equity Loans and Lines (revised 8/12/05) - **HIGHLY CONFIDENTIAL** |
| 49 | Broker Agreement between MortgageIT and Lancealott |
| 50 | Letter from Jack Weinstein of Lancealott dated 10/7/05 |
| 51 | Legal fee invoices for Day Pitney |
| 52 | Legal fee invoices for Conrad O'Brien |

## (7)   LEGAL ISSUES AND PLEADINGS

MortgageIT notes that, during the pendency of this matter, Plaintiffs' claims against MortgageIT have been informally amended, changed and revised, raising serious issues as to prejudice to MortgageIT if Plaintiffs are allowed to further informally amend their claims. While Plaintiffs' inconsistencies discovered to date can be addressed through cross examination to explore their credibility and the legitimacy of their claims, any further informal amendments of their claims against MortgageIT will be prejudicial. Examples, and not by way of limitation, of Plaintiffs'

informal amendment of their claims are as follows:

- Plaintiffs did not raise any issue in their Complaint as to the terms of the Larger Loan, other than the inclusion of a prepayment penalty, which they contended they learned about at the closing. At depositions, Mrs. Parker claimed that she did not learn about the prepayment penalty until after the closing. Plaintiffs also raised, for the first time at Mrs. Parker's deposition, an issue with the amortization provisions of the Larger Loan and the fact that it contains a variable rate of interest. There is no claim in the Complaint concerning those provisions.

- As to the Smaller Loan, the Complaint did not raise any issue regarding the fact that this loan had a balloon feature. At depositions, this issue was raised for the first time.

- Plaintiffs initially alleged in the Complaint that they received various disclosures regarding the Smaller Loan, but no disclosures regarding the Larger Loan. Nevertheless, Plaintiffs attached various documents regarding **both** loans to their Complaint.

- In opposition to MortgageIT's Motion for Summary Judgment, Plaintiffs contended, for the first time, that they received no documents concerning the MortgageIT Loans before the closing. Yet, they produced a stack of documents in response to MortgageIT's document demands which included two Good Faith Estimates containing Mrs. Parker's handwritten comments, which documents she testified were received prior to the closing.

- At her deposition, Mrs. Parker testified that she received a "big envelope" of documents from MortgageIT before the closing that included the two Good Faith Estimates referenced above. Mr. Parker corroborated her testimony. Shortly after their depositions, Plaintiffs filed yet another affidavit claiming that they did not receive any documents before the closing. When confronted with the deposition testimony in a letter from MortgageIT's counsel to

Plaintiffs' counsel, Plaintiffs advised through a letter from their counsel that they had been confused by the questioning and recanted their deposition testimony.

▪ Plaintiffs produced various documents in response to MortgageIT's demand for documents, some of which were clearly received before the closing. Moreover, there are also documents conspicuously absent from Plaintiffs' production that were attached to Plaintiffs' Complaint as Exhibits. Indeed, Plaintiffs allege in the Complaint that they received two copies of the notices of right to cancel yet only attach one as an exhibit to the Complaint and none were included in their document production.

MortgageIT is concerned that Plaintiffs may continue to change their claims throughout the trial, thereby preventing the defendants from properly defending the ever-changing claims, and requests that the Court take note of these changes in position.

Further, Plaintiffs, on December 10, 2007 - - one week before the trial - -identified an expert witness. None of the defendants has been provided with a copy of any expert report. The late identification of an expert, and the failure to timely produce a report, has severely prejudiced the defendants. MortgageIT will be filing a motion seeking to preclude Plaintiffs from presenting expert opinion at trial or, in the alternative, to adjourn the trial date to allow proper expert discovery.

**(8)   TRIAL TIME**

The Court has allocated two days to try this matter.

**(9)   DISCOVERY EVIDENCE AND TRIAL DEPOSITIONS**

<u>MORTGAGEIT – DISCOVERY ITEMS</u>

a.   Plaintiffs' Responses to MortgageIT's First Set of Interrogatories

b.   Affidavit of Plaintiffs in Opposition to the Motion of MortgageIT for Summary Judgment

c.      Affidavit of Plaintiffs in Opposition to the Motion of Countrywide for Summary

Judgment

### MORTGAGEIT – TRIAL DEPOSITIONS

MortgageIT assumes that Plaintiffs will each testify at trial and therefore has not

identified any deposition testimony to be introduced.

Respectfully submitted,

CONRAD O'BRIEN GELLMAN & ROHN, PC


/s/ Frank R. Emmerich Jr.
Frank R. Emmerich Jr.
1515 Market Street – 16th Floor
Philadelphia, PA 19102-1916
Telephone: (215) 864-8086
Fax: (215) 864-9620


DAY PITNEY LLP


/s/ Joy Harmon Sperling
Joy Harmon Sperling
P.O. Box 1945
Morristown, New Jersey 07962
Telephone:  (973) 966-6300
Fax: (973) 966 1015

Dated: December 10, 2007

## CERTIFICATE OF SERVICE

I, Frank R. Emmerich Jr., hereby certify that on December 10, 2007, I caused a copy of

the foregoing Amended Pre-Trial Memorandum on Behalf of Defendant MortgageIT, Inc., to be

electronically filed and that the pleading was also served by first class mail upon the following:

David A. Scholl, Esquire
6 St. Albans Avenue
Newtown Square, PA 19073

Linda Arlene Michler, Esquire
7228 Baptist Road #175
Bethel Park, PA 15102

Elizabeth F. Abrams, Esquire
Andrew J. Soven, Esquire
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301

Stephen G. Harvey, Esquire
Alison Altman Gross, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Thomas J. Gregory, Esquire
Murphy & O'Connor, LLP
Two Penn Center Plaza
Suite 1100
15th & Street and JFK Boulevard
Philadelphia, PA 19102

Martin C. Bryce, Esquire
Michael I. White, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street – 51st Floor
Philadelphia, PA 19103


/s/ Frank R. Emmerich Jr.
Frank R. Emmerich Jr.